# Richmond

JEWEL TEA COMPANY, INCORPORATED v. PERCY PHELPS.

January 16, 1936.

Present, All the Justices.

The opinion states the case.

*Page, Page & Page,* for the plaintiff in error.

*Maurice B. Shapero* and *Rixey & Rixey,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This case grew out of an accident which happened in the city of Norfolk, on the sidewalk at the northeast corner of Monticello avenue and Twenty-second street, a business district in the city. It happened in the morning. Monticello avenue runs north and south, and is forty-two feet wide from curb to curb, and is paved with asphalt its entire width. Twenty-second street, which crosses Monticello avenue at right angles, runs east and west. It is thirty-two feet wide from curb to curb, and is paved with cobblestones.

The defendant's truck, driven by its employee, R. W. Rose, was proceeding north along Monticello avenue at a speed estimated from twenty to thirty-five miles per hour. The plaintiff, Percy Phelps, a colored man, was standing on the sidewalk at the northeast corner, where the two aforesaid streets intersect, with his back to the intersection, waiting for a call to work at the Bell Storage Building, which is located on the corner  The defendant's truck left the roadbed of Monticello avenue, and went over the curbstone and on to the sidewalk at the northeast corner, and struck and knocked down the metal street light pole and struck a telephone pole, and then struck and knocked down the plaintiff, resulting in serious, permanent personal injury to the plaintiff.

The plaintiff instituted this action, and a verdict was rendered in his favor by a jury in the sum of twenty-five hundred dollars, which verdict was sustained by the judgment of the trial court. The sole question here is, whether there was sufficient evidence of negligence upon the part of the defendant to make it a question for the determination of the jury. The evidence is clear and convincing that the defendant's driver, R. W. Rose, lost control of

his truck, drove up on the sidewalk in the manner and with the result referred to.

There was a car being driven at the time of the accident by W. B. Ferguson, who was driving south on Monticello avenue. Ferguson testified that there was a parked car, which was on Monticello avenue at the right, and that he was driving well to his right, and as he approached Twenty-second street, he saw the defendant's truck from twenty to twenty-five feet south of the intersection of Twenty-second street, proceeding north on Monticello avenue at a speed of about thirty-five miles per hour, and that as he approached the parked car, and came almost opposite to it, the driver of the truck lost control of his truck, with the result referred to. That he, Ferguson, stopped about opposite the parked car, on the northwest corner, and backed his car to the western curb of Monticello avenue, and took his position to the rear of the aforesaid parked car. Ferguson further testified that no part of his car got to the left of the center of Monticello avenue, and that he did not in any way interfere with the course of the defendant's truck. This witness testified as follows:

"Q Where was the Jewel Tea Company's truck when you first saw it?

"A. It was down here, probably twenty feet or twenty-five feet below the intersection of this corner, coming up this way.

"Q. How was he acting?

"A. He was acting as if he was confused. He was—the truck was zigzagging—and I could readily see he was confused in what he was trying to do, but his general direction was towards this pole.

"Q. Was there anything to prevent him from turning here (indicating), that you could see?

"A. I could not see anything. There may have been some few cars out in here, but I am not positive, but I don't think there was any right on the corner, anyway. There was no car coming out here. It seemed to me that he got confused further down."

Mr. A. D. Jordan, manager of the White Automobile Company, Norfolk branch, testified that he was in the office of his place of business at the time of the accident; that he did not see the accident, but that he heard the crash of the defendant's truck striking the pole and post and plaintiff on the sidewalk; that he saw the position of defendant's truck on the sidewalk, and the Ferguson automobile backing from the entrance to Twenty-second street on to the western curb of Monticello avenue. The following questions and answers constitute a part of this witness's testimony.

Q. You don't mean that he was backing out of Twenty-second street?

"A. No. sir.

"Q. He was on Monticello avenue backing up?

"A. Yes.

"     *     *     *     *     *     *     *     *     *

"Q. According to your version, Mr. Jordan, his car (Ferguson's), if it was a Studebaker car, had not crossed this center line (of Monticello avenue) right here when you saw it, had it?

"A. I didn't— that is the reason I called this officer's attention to it. I asked him to go out there and make a notation of it. I don't know about that. The only thing— I being on the inside, I wondered what was the cause of the accident, and I saw this car backing out.

"     *     *     *     *     *     *     *     *     *

"Q. You have drawn just about where they were when you saw them?

"A. When I came out of the store, this car had backed out, and whether he reached the center, or further, I can't say to save my life."

The defendant bases its defense largely upon the testimony of its witness, W. A. Holt, and that of the driver of its truck, R. W. Rose. The onus of Holt's testimony was that the Ferguson car attempted to make a left turn, and thus impeded the onward progress of the truck, and this occurred too late for the truck to do anything else than it

did do. Therefore, the accident was unavoidable so far as the defendant was concerned, but was caused by the negligence of Ferguson in blocking the way by an improvident and untimely attempt to make a left turn. Even if the Ferguson car had gotten east of the center line of Monticello avenue in making a left turn, this affords no excuse or justification for the action of the driver of the defendant's truck. He could have stopped or slowed up his truck before striking the plaintiff on the sidewalk, particularly if his speed were limited to twenty miles an hour, as he placed it. He might have turned to his left, and gone around the rear of the Ferguson car, as the latter was in a position of rest—it had stopped. He might have turned either east or west into Twenty-second street—for it will be noted that Twenty-second street was thirty-two feet wide. Of course, all these questions were settled by the verdict of the jury, which verdict had the approval of the trial court. Holt was employed by Mr. Jordan, at the White plant, and Mr. Jordan testified that he, Holt, was a "big talker." This characteristic was suggested as in somewhat accounting for the highly colored account given by this witness of the accident, and favorable to the defendant. The defendant's driver, R. W. Rose, testified for the defendant, and stated that his speed was about twenty miles per hour, and his testimony was in favor of the contentions of the defendant.

The witnesses, during the trial, were called to a blackboard, and there caused to elucidate and make plain by drawing their versions of what occurred as to the accident. The jury was allowed to view the scene of the accident. Its members and the presiding judge saw the witnesses, took note of their demeanor, and doubtless tested their testimony by what the conditions at the scene of the accident made plain to their senses.

They reached their conclusion, and as the evidence was conflicting as to the question of negligence on the part of the defendant, this court is bound by the verdict

unless we could say that it is plainly wrong, or without evidence to sustain it. This we cannot do.

We here refer to authorities cited in the case of *Sisson* v. *Anderson, &c.,* post, page 629, 183 S. E. 431, decided at this term of the court, and the authorities upon which that case is based and predicated. The facts in that case are quite similar to those in the case in judgment, and the principles enunciated are controlling of this case. There are assignments of error based upon the instructions given by the court. We find no error in the instructions. All of those asked by the defendant were granted. The instructions, taken as a whole, we think fairly and clearly propound the law to which they were intended to apply. Instruction "F" was as follows:

"The court instructs the jury that the defendant, Jewel Tea Company, is responsible for the negligence, if any, of the driver of its truck."

This was intended to place before the jury the law of the doctrine of *respondeat superior*. It might have been more explicit and definite in its application, and if this be error, we think it was harmless, as other instructions covered the matter.

It follows that we think the judgment of the trial court was right, and therefore its judgment is affirmed.

*Affirmed.*